In this case, State Farm paid $296,000 or $296,000 worth of chiropractic services. The services were provided to State Farm insurers who were injured in covered motor vehicle accidents. State Farm was obligated to pay those amounts pursuant to PIP coverage by statute and by insurance policies. All of the services rendered were reasonable, were medically necessary, and were causally related to the covered motor vehicle accident. When you say they were obligated to pay, if everybody had known all the facts in advance and they said, we want you to pay this unlicensed clinic holding licensed doctors, would they have been obligated to pay under their policy? Yes, Your Honor, because the services were provided by duly licensed Kentucky chiropractors. Are there any insurance coverage cases of that sort that would say that? No cases have been cited by either side on that specific point, Your Honor. But again, the key to that question is that as the cases have considered these sorts of issues, Suppose the medical board had ordered the clinic to shut down, but there were still licensed chiropractors on the premises. They would still be obligated to pay? In our view, yes, because again, the services were provided by duly licensed chiropractors. But that's not really the question before the court, because there's a huge difference in the case law between whether the money hasn't been paid to an unlicensed provider and the recipient is trying to resist payment, and those cases where the money has been paid and the recipient is trying to get the money back. Those cases are governed by the case law on common law mistake. Even though State Farm sued Dr. Planbeck under a number of different theories, the only theory which survived the trial court and the only theory which is before this court is common law mistake. And common law mistake has been articulated by a number of different courts in Kentucky. I'm just going to quote the basic principles from Supreme Council versus Fenwick. Whenever by a clear or palpable mistake of law or fact, essentially bearing upon and affecting the contract, money has been paid without consideration which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it may and ought to be recovered. There are two components of that that I want to focus on. The first is a mistake of law or fact essentially bearing upon and affecting the contract. There are two absolute failures of State Farm's case here on that issue. One is there's no proposition advanced by State Farm that any particular contract provision was the subject of some mistake by State Farm in paying these claims. There is in fact, amazingly, notwithstanding the fact that this is a contract theory, not a single contract in the record, not a single contract in evidence, there's no contract that State Farm asserts, we made a mistake. But what about the reality that, you know, had everyone known this stuff, each time there wouldn't have had to be a payment? In other words, had folks known at the time the chiropractic service was performed or requested that the owner of the clinic was not licensed, they probably could have avoided paying at the time for each service. It seems to me the law probably supports that position, and if that's true, isn't it not that big a next step to say, well, if that's true, why can't they get it all back? It's a hypothetical that didn't occur here. Well, that's true of all hypotheticals, but how do you answer it? Reason, and I don't mean to be trite about that or dismissing the court's question, but the point is, that's not what happened. We have to address the facts that did happen. I'm trying to think about a way of thinking about the case that makes sense, and the thing, I get some of the parts of your argument, which is four and a half years, this seems like a pretty significant, serious way to respond to this problem, but the fact is, at each incremental step, you probably wouldn't have had to make the payment, had they known then that he wasn't licensed. I don't agree that that's true. You think if at the time the services were requested, and State Farm had found out they're just about to process the bill, and they're insured calls and says, you know, I just realized this clinic's not even being properly run, State Farm couldn't have said, hey, whoa, whoa, we're not going to pay this bill. I don't think so, your honor. I think that's purely an administrative issue between the Kentucky Board of Chiropractic Examiners and Dr. Plambeck as to whether the clinic was properly licensed. The fact is that all of the services were provided by duly licensed Kentucky chiropractors. Counsel, am I right? I mean, obviously there are cross appeals, there are other issues, but at least in Judge Simpson's order and the way it's set up, the money they're trying to get back is money that ultimately went to Plambeck, not to the licensed contractors themselves, chiropractors themselves. Is that right if we accept the computations? It's right in the sense of the money was paid to the clinics, but certainly that money went to pay the chiropractor's salaries, the chiropractor's bonuses. Nobody's trying to get money back from Dr. Smith. I mean, if Plambeck has to pay it out, then whatever happens between him and the chiropractors, we have no idea, but it wouldn't seem he's got any way to recover any loss that State Farm gets back from him, is there? Is there a way for Dr. Plambeck to seek compensation from the treating chiropractors who got some of the money? I don't know, and frankly, we're not. Let me ask the question in a slightly different way, just to make sure I'm following this. Their theory was not, we want your clients' profit. Their theory was, we want all of the payments back. Absolutely. So presumably most of the payment did go to each chiropractor that did the service, because that's obviously the key cost in the business. Sure. Do you have a sense for the percentages? I don't. But the theory was never profit, the profit your client got, it was just everything that was paid. Exactly, Your Honor. This is one of those rare cases where the plaintiff literally suffered no injury. In a sense, when you say all services, isn't the question, did you get people manipulating your spine, or did you get people operating in a lawful and licensed way? Operating your spine. If you say, here's the illegal, unlicensed clinic with an honest chiropractor in it, and here's the completely legal and honest clinic, they're not the same thing, really, are they? They're not the same thing. One might be cheaper than the other, even if you went there, but you'd know what you were getting. State Farm was obligated to pay the value of reasonable medical services that were necessary and related to a covered motor vehicle accident. There's nothing in, first of all, we don't have an insurance policy to even look at, but there's no contract that was subject of a mistake that said, State Farm only has to pay if the clinic is duly licensed, regardless whether the person was injured, regardless whether the treatment was necessary and reasonable, and regardless whether all the treatment was provided by a duly licensed chiropractor. If you saw the movie Catch Me If You Can, if Leonardo DiCaprio takes out your appendix, and he does a good job, but he's just not really a doctor. You've got to pay for that? It's a reasonable medical service. Appendix healed up pretty good. There are several differences from our case. One is, you pose the question, do you have to pay for that? State Farm did pay for it. The law is just diametrically opposed whether you're resisting the claim, or whether you've already paid it and get your money back. And whether you get your money back after you've already paid it depends on two key factors that simply are not present here. One is that State Farm made a mistake about a contract that they're obligated to pay for licensed chiropractic clinics. I'm not sure you're really responding to Judge Boggs' question, so let me try to help you respond to Judge Boggs' question. I wonder if it's just a question of competing analogies. It is true, right? There is a difference between the two clinics. One where everybody, including the owner, is licensed, and the other where the practitioner is licensed, but not the owner. And I think that's a difference. And the question is how much of a difference that is and how important it is. I would say the better analogy for you is to compare clinics where one has paid all of its taxes and the other has not. Should that be a reason for not being able to keep the money? Or one is zoned properly and the other is not? They're in a residential area? They shouldn't be in a residential area because you're only allowed to operate these clinics in non-residential zones. I don't know the answers to these, but that strikes me as what this case is about. That's good. That's exactly good. As always, I'm always appreciative of any help I get. Thank you, Counselor. Your time has expired. Did you save time for rebuttal? I did, Your Honor. Five minutes. Good morning, Your Honors. I've reserved three minutes of rebuttal time, but only on State Farm's cross-appeal. May it please the Court. As far as the issue that State Farm is being or that State Farm's that doesn't involve State Farm's cross-appeal, what the questioning for Mr. Stein was about, I think the feeling that the Court is getting is the same feeling that I got responding to these arguments, and it is, what is the remedy then? If the privity argument stands, which I don't believe was raised in the initial dispute at the trial court level, but if it stands, it basically stands for the principle that State Farm was required by law and contract to make these payments directly to Dr. Plambeck, first as a sole proprietor, and then to the PSCs as incorporated professional entities. But if there was some mistake or problem with those payments that made them illegal or not due, that the only recourse that is available then to State Farm is to sue the insureds, and then force the insureds to, I guess, seek a contribution action against the clinics that provided these services, that while they were done by licensed Kentucky chiropractors, were still done in violation of the law. And let's just say you're right about this, the mistake doctrine applies whether you have a direct contract or not. And for you, we're in the or not category. And let's just say the mistake doctrine can apply there. You would agree there is a distinction between realizing someone's not licensed at the time of the service or at the time of paying for the service, and that, you know, I think there's a little more leverage on your side in that setting than there might be four years worth of payments. I mean, do you deny that there's a difference between those settings? The prospective, I'm not going to pay having learned that I got something I didn't think I was getting, service from a properly licensed clinic, versus four years after the fact, collecting everything that's been done. If you follow the district court's analysis on that, and that's the one that I adhere to, there was no requirement for State Farm to make that inquiry into whether those payments were valid or not at that time. And if they can show that once they were on notice of the damage that was done to them, that there were payments going back as far as they could find, I believe that it wouldn't matter. And all of those payments should have been disgorged. But doesn't the case law suggest there's a difference? I'm not saying the case law means you lose, but it does seem like the cases make it a lot easier to avoid paying at the time, as opposed to having had, you know, a series of deals in here four years worth, and then trying to disgorge all of it. It certainly seems that in the case law that deals with situations involving either an arm's-length transaction or some supposition that notice could have been obtained or should have been obtained, is what I actually should say. And here, as long as State Farm was under no legal obligation to inquire as to every single payment made to every single medical provider in Kentucky during this time period, as long as there's no obligation to inquire into those, I don't believe the time periods involved that the transactions took place is relevant. Let's just say you're right, and Judge Simpson's affirmed. Would it be legitimate for every insurance company in the country to go back through all of its payments, not just to chiropractic clinics, all of its payments to everyone, and find any time there's been a lapse in license, and then disgorge everything that was paid for that period? I take it they would be allowed to do that, wouldn't they? They could certainly try. Well, no, but you have to believe they can, right? I mean, you want to win. That's the theory of victory here. How would it not be the theory of victory there? Because there are fact questions that aren't present in the hypothetical involving potential notice. Everything else is exactly the same. In fact, the only thing that gives them notice is this beautiful opinion that gets circulated to all the general counsels of the insurance companies in the country. Like, this is worth a lot of money. That's their first notice. And they send somebody out, and they investigate, and they start finding the negligence that invariably happens. People's licenses lapse. In fact, probably the easiest way to do this would be to go to the licensing boards and find all the people that had to let their license lapse, had to seek permission to get re-licensed. Boom, you've got the window. If they were practicing without licenses in violation of the law, I don't really see the problem with that. I'm talking about ownership, the ownership issue. Even the ownership interest, because that is still in violation of the law, and the law is not simply a revenue-raising statute. This is a public safety statute. Which says $500 penalty if you violate it. Right, but it does not say that there's not a civil penalty there that is available to the insurance companies to recruit those losses. If the aggregate... Well, this isn't a civil penalty. This is a civil suit. I mean, you can't... You're not a private attorney general in some kind of civil penalty situation, right? There was a civil penalty that was provided under the statute for intentional misrepresentations that the court did find against us on. But the court also found that that didn't preclude us from seeking a mistake cause of action under common law. But my belief is... Okay, but so presumably though this same theory, just to really cut close to home, is there are repeatedly cases of wonderful lawyers who just never happened to take the bar. So presumably... Not to Leonardo DiCaprio. Well, but even more realistic people... He took the bar. Even more realistic... I'm sure he didn't go to law school, right? No, but much more... I mean, it happens every once in a while. You find some partner at big law who just happened never to have taken the bar. Presumably, you know, insurance coverage for some litigation defenses would also come within that, would it not? There are still statutes of limitations that would apply. That's true. There is still a five-year statute of limitations that would apply to any discovery of that. Oh yeah, they'll be comfortable with that. Five years... You've got 400,000 in four years here. And that's to correct the... These guys' rates are not as good as the rates at big law. Well, to correct the record actually on that, that was the aggregate amount against Dr. Planbeck individually. State Farm is also seeking to recoup against the corporations once they were incorporated, and I believe that full amount is about $1.1 million that would be in play if the district court's decision on the PSCs was overturned, which is what we're seeking in this appeal. And I guess I can shift gears to that so I can at least address that. Before you do, help me just conceptualize exactly who was victimized and by what measure. State Farm, I think, believes it was victimized. State Farm was victimized and the public was victimized. But State Farm, you allege, fundamentally paid for things that it or its privies did not receive. No, it paid for services that the individuals did receive as far as what is... By virtue of the licensing, SNFU paid more than would otherwise have been due? Well, we don't know that because that wasn't an issue originally. Is it your general approach that that was likely done? We aren't disputing that the charges, at least in this appeal, we're not disputing that the charges were reasonable and necessary. So there is no... If you would say that because of the lack of licensing, we were somehow charged more, that's not an issue before this court. It's conceivable you were charged less, I suppose. It's possible. But if you say, counsel, if you say the charges were reasonable and necessary, doesn't that, in effect, vitiate my hypothetical that it really was a different service? And the other side's argument is, you know, the car back machines and the subluxations all were just exactly the same, and whether the clinic was licensed makes no difference at all. So then that service that they got, the treatment in an unlicensed clinic, is a reasonable and necessary service. Is that what I heard you say? Well, I would say that regardless of the treatment quality itself, what we're talking about here is an argument of, there was no harm this time, so let it go. And then the next time it happens, maybe there will be harm, maybe there won't be. But we shouldn't let that happen. We shouldn't let it get to the next time. That's really a kind of private attorney general argument, isn't it? That you're serving a public interest here, not that you have a contractual right. There are numerous civil cases out there, and I can't name all of them, where there is a private interest in enforcing the violation of a public statute. That's kind of a public policy argument on which is not what it went to judgment on. I mean, that was the statement of the other side, and I think they're correct, right? I mean, Judge Simpson at least ruled on this pure mistake of law theory, common law mistake theory. Is that right? That's correct. And nobody should profit from illegal activity, though. So tell me about the criminal statute. I hadn't realized about the civil fine component of it, but the criminal fine, it says maximum of $500. Is that per violation? So, for example, each time you paid, would you say, I just don't know how this works, would that be $500, or would you say when you realize someone's been practicing without a license, that's maximum $500? And honestly, Your Honor, I don't know. I didn't really focus on the criminal statute itself. No, I just was curious. I'm just trying to figure out what the maximum financial criminal exposure was for this four years of misconduct. I don't know, and it's my understanding, it's not in the record, but a deal was actually reached between Dr. Plambeck and the Kentucky Board of Licensure that it's not part of the suit involving these transactions. Which made everything okay somehow, made the problem go away, so to speak? Perhaps from a criminal standpoint, but we don't believe from a civil standpoint. Do you know if every state in the union constructs an equivalent licensing regime? Or are there some states, perhaps, in which it doesn't really matter whether the entity is licensed as long as the practitioners are? I do not know that outside of Kentucky in particular. Just to sum up, my main issue of State Farm's cross-appeal would be the fact that the judge considered the corporations differently than Dr. Plambeck. I don't think there is a distinction between the two under the licensing regime. A properly licensed professional service corporation may have an outside licensed individual as a member or shareholder, depending on the entity. That doesn't mean, though, that that entity can then own or operate a Kentucky chiropractic clinic and therefore escape the strictures of the licensing regime. I'm going to leave my times out. Thank you, Counsel. Counsel, you have time for response to their appeal and rebuttal on your own appeal. Thank you. I'll try to cram that into five minutes the best I can. Judge Sutton's analogies were exactly apt at the close of my opening argument, which is all those technical violations have nothing to do with State Farm, had no impact on State Farm, as is the case here, because all the services were reasonable and necessary as conceded by State Farm and rendered by licensed chiropractors. But, you know, one thing about a victory for them is you're going to have people being really careful about making sure your license is up to date. Isn't that a virtue? It may be a laudable virtue, but it's not a legal issue in this case. This is a public policy doctrine we're dealing with. No, we're dealing with a private contract claim, a private equitable claim for mistake. This isn't an administrative agency trying to determine how to make an example of Dr. Planbeck so other people will be licensed before they own a clinic. Dr. Planbeck, in fact, was licensed for many years in Kentucky, led his licensed labs, contemporaneously with the services... I'm just making the point... Like for five years though, right? For a while. This wasn't like he forgot to go down on December 31 to renew it. He, and this is not on the record, so I won't address that, but he was licensed in several other states contemporaneously. Basically, he's running this business and he isn't doing the services himself and he says what the heck. He had that advice and that advice proved to be wrong. And to answer the question that was raised, there are many states that don't require the owner of a chiropractic clinic to be licensed. Counsel for State Farm raised a public safety issue. There is none here. There's no suggestion of any negligence. There's no suggestion of any malpractice or any injury to anybody in the public by these dozens of State Farm insurers... Well, Kentucky requires the owner to be licensed for a reason. I don't know what it is, but don't you think it relates to public safety? He's supposed to exercise ownership, oversight, supervision, and so forth. I suppose it's the same reason we don't allow private corporations to own law firms. Only lawyers, only licensed lawyers get to own law firms. There may very well be those considerations that the Kentucky legislature was considering when actually it's not even a legislature, it's an administrative rule. Or it's a statute. But again, there are other states that don't have that consideration. So whether or not there's that indirect supervision... Certainly Dr. Planbeck was never physically at the locations. He wasn't ever directly supervising any of these treating chiropractors. They were trained in chiropractic school. They were licensed. They were on their own in these clinics providing these services. So whatever Dr. Planbeck's status was, it had no impact. How does this case come out if not only was your client not licensed, but there were two chiropractors there, and it turns out they weren't licensed the whole time? How does the case come out? Did they stay farmed in that setting because they were actually delivering the services? Did they get the $500,000 in that setting? That would depend on facts that weren't developed here. Because, again, another one of the elements of this common law mistake claim is that for the money to be recoverable, it had to have been paid without consideration. Here it was. The money was paid for the services that were reasonable and necessary by licensed chiropractors. There, in that scenario, the question would be, if the services had been provided by non-licensed chiropractors, would that be consideration under the applicable case law? And so your answer would be? Don't know and it doesn't matter because these guys were licensed. There was consideration. I agree with your first point. I'm sorry? I'm sorry? No, it doesn't matter. Your first point was, I don't know. The second point was, it doesn't matter. It doesn't matter. I don't agree with your second point. It doesn't matter. It doesn't matter because that's not the facts here. It's not that it doesn't matter philosophically whether unlicensed chiropractors ought to be paid for their services or whether someone who paid for those services should get the money back. It doesn't matter because that's not our facts. Our facts are that these are licensed chiropractors. They provided consideration. They provided undeniably, undisputed, valuable services for the money that it was paid. There's no dispute about that. There's no question about the dollar amount. There's no question about the value of the services. There's no question about the quality of the services. There's no question that the people were injured and that they were related to covered motor vehicle accidents. We presume as a practical matter, don't we, that Dr. Plamek is being compensated for his efforts somehow in running these clinics and that likely, if $100 were paid by State Farm for a particular chiropractic service, the licensed chiropractor who provided the service didn't get $100 because there has to be a little spoof in there somewhere for the guy that runs and owns the clinic, right? Every owner of a business intends to make a profit. Some do, some don't. In addition to the salary of the chiropractors, there's rent, there's overhead, there's staples, there's liability insurance and so forth. So that was never developed here. That was never an issue in the case. Thank you, counsel. Thank you. Anything further? Nothing. Okay. Thank you, counsel. You have your three minutes for Sir Rebuttal, which he didn't attack. I guess, do we have any questions? So really, your cross-appeal, you're focusing on the corporations part for which you did not prevail below, and we have your briefs on it. And obviously, if you lose on the first point, you're going to lose on that anyway. But on the other hand, we can look at that. Any questions specifically on that point from my colleagues? Okay. Thank you, Your Honor. The case will be submitted, and the clerk may call the next case. Thank you.